T.C. Memo. 2010-13

UNITED STATES TAX COURT

MYSTERYBOY INCORPORATION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21011-08X.          Filed January 26, 2010.

Eddie C. Risdal (Director), for petitioner.

William I. Miller, for respondent.

MEMORANDUM OPINION

CHIECHI, Judge:  Respondent determined that Mysteryboy

Incorporation is not exempt from Federal income tax (tax) under

section 501(a)[1] because it is not an organization described in

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at all relevant times.  All
Rule references are to the Tax Court Rules of Practice and
(continued...)

section 501(c)(3).  After having exhausted its administrative remedies, petitioner challenged that determination by timely seeking a declaratory judgment pursuant to section 7428(a).  The parties submitted this case under Rule 122 on the basis of the stipulated administrative record (administrative record).  For purposes of this proceeding, the facts and representations contained in the administrative record are accepted as true, see Rule 217(b), and are incorporated herein.

We must decide whether petitioner is exempt from tax under section 501(a) because it is an organization described in section 501(c)(3).  We hold that petitioner is not exempt from tax under section 501(a) because it is not an organization described in section 501(c)(3).

## Background

At the time petitioner filed the petition, its address was in Iowa.

On January 8, 1991, Eddie C. Risdal (Mr. Risdal) incorporated petitioner under the Iowa Nonprofit Corporation Act, chapter 504A of the Code of Iowa as then in effect.  At all relevant times, Mr. Risdal was, and will continue to be, the sole director, the sole officer, the sole employee, and the executive director of petitioner.

---

[1](...continued)
Procedure.

Petitioner's articles of incorporation state in pertinent part:[2]

The purpose or purposes for which the corporation is organized is/are: charitable. working for law change to protect the rights of sexual active consenting kids and adults; and to amend child sexual photography law; to provide counseling to sexual active kids & adults; and scientific studys; educational, & artistic

Petitioner's bylaws provide in pertinent part:

NO LATER THEN YEAR 2006 A MEMBERSHIP DRIVE WILL BE EXECUTED. ALL MEMBERS WILL PAY A SET DOLLAR AMOUNT PERPETUALLY OR/AND IF PREFERED PAY A LIFE TIME MEMBER-SHIP FEE OF A SET REASONABLE AMOUNT.

(A)= MEMBERS WILL BE INVITED TOO A PERPETUALL MEETING ON FUTURE BUSINESS PLANNINGS AND WILL HAVE A VOTING POWER ON PRESENT & NEW PROGRAM IDEAS TO BENEFIT SOCIETY AT LARGE, PLUES A FREE COOK-OUT DINNER WITH DRINKS WILL BE PROVIDED FOR ALL MEMBERS & DIRECTOR FROM THE INCOR-PORATION.

(B)= MEMBERS WILL RECEIVE TWICE OR MORE PERPETUALLY THE INCORPORATIONS NEWS LETTER THAT INFORMS MEMBERS OF WHAT THE INCORPORATIONS BEEN DOING SENSE THE LAST NEW LET-TERS, ALSO MEMBERS WILL BE INCOURAGED TO WRITE THEIR POINTS OF VIEWS OR OTHER EDUCATIONAL ARTICLES IN THE SAID NEWSLETTER, ALSO SAID NEWS LETTER AND OTHER EDUCA-TIONAL MATERIALS WILL BE MADE AVAILABLE TOO THE GENERAL PUBLIC AND POLITICIONS PRO BONO OR AT MINIMUN COSTS.

(C)= NO MEMBER WILL HAVE THE VOTING POWER TO REMOVE THE EXECUTIVE DIRECTOR UNLESS SAID DIRECTOR IS FOUND GUILTY IN A COURT OF LAW OF A FELONY OF MIS-USING THE INCORPORATIONS FUNDS FOR HIS/HER OWN PERSONAL GAIN.

(D)= IN THE EVENT OF DEATH OF THE EXECUTIVE DIRECTOR, ALL MEMBERS SHALL BE NOTIFIED WITHIN 30 DAYS, AND MEMBERS SHALL HOLD A SPECIAL VOTING TO ELECT A NEW EXECUTIVE DIRECTOR WHO WILL CONTINUALLY TOO HONORALLY

---

[2]All quotations herein from various documents that Mr. Risdal prepared on behalf of petitioner and that are part of the administrative record are reproduced literally.

CARRY-OUT THE GOALS OF THE INCORPORATION PERPETUALLY
EVER AFTER, AND IN EVENT OF THIS SAID DIRECTOR FOR THE
SAME RULES WILL APPLY IN VOTING-IN A NEW DIRECTOR.

(E)= THE EXECUTIVE DIRECTOR IS TO HAVE OVER TEN YEARS
OF SCIENTIFIC STUDY & RESEARCH INTO HUMAN SEXUALITY,
PSYCHOSEXUALITY, CRIMINOLOGY, MYSTICS, NO COLLEGE
DEGREES ARE REQUIRED BUT NATURAL EXPERIENCES ARE RE-
QUIRED.  SAID DIRECTOR SHALL BE OPEN MINDED TO EVERY
FORM OF HUMAN SEXUALL IDENTIES & PREFERENCES AND SHALL
NOT DISCRIMINATE TO ANY ADULT OR CHILD, AND SAID DIREC-
TOR & MEMBERS INCLUDED SHALL ASSIST ANY NON MEMBER OR
EVEN MEMBER WHO MAY BE IN NEED OF COUNSELING, OR IN
NEED OF ANY OTHER FORM OF ASSISTENCE AS A LAST RESORT
TO SAFE GUARD THEIR LIFE, SAID MEMBERS SHALL REPORT
THEM TO THE INCOPORATIONS OFFICE IMMEDITALLY SO THAT
THE INCORPORATION CAN CONSIDER ASSISTING THEM IN ANY
WAY POSIBLE WITHIN THE INCORPORATIONS GOAL CARRYING-OUT
PROGRAMS.

(F) MENBERS SHALL NOT PROMOOT, BUT WILL NOT DENY THE
FACT OF PAST & PRESENT HUMAN HISTORY THAT HUMANKIND
FROM YOUTH ON-THROUGH ADULTHOOD HAS IN MAJORITY BEEN
SEXUAL ACTIVE WHETHER BE IN PROMISIOUS, DEVENTCY, OR
EXPERIMENTATION SEXUAL ACTS, AND MENBERS WILL PROMOOT
SAFE SEX EDUCATION AND SAY NO TO ILLEGAL DRUGS USES
UNTIL THE EVENT THAT THEY BECOME LEGALIZED, MENBERS
WILL PROMOOT FEED THE HUNGARY, SUEICIDE PREVENTION AND
ANY AMENDED PROGRAMS AS THE INCORPORATION FINDS SUCH A
PUBLIC NEED TO ADD SUCH PROGRAMS THAT WILL BENEFIT
SOCIETY AT LARGE.  NO MENBER SHALL PROMOOT ANY KIND OR
FORM OF LAWS OR ADVOCACY PERSON OR ORGANIZATION WHOS
GOALS PROMOOT OF INFLUENCE HATERAID OR/AND VIOLENCE.

(G)= MEMBERS SHALL SUPPORT THE INCORPORATION AT ALL
TIMES IN ITS ADVOCACY AND GOAL CARRING-OUT, AND MENBERS
SHALL ALWAYS RETAIN THEIR RIGHT TO DISAGREE OR BRING
NEW EDUCATIONAL IDEAS & PROGRAMS INTO EXSISTENCE AND IN
NO WAY BE PUNISHED FOR THEIROWN PERSONAL IDEAS & VIEWS.

    *       *       *       *       *       *       *

(I)= THE EXECUTIVE DIRECTOR SHALL ACT AS OFFICER,
TREASURER UNTIL AT SUCH A TIME A NEED ARAISES TOO
APPOINT OFFICERS & A TREASURE, OR AT A TIME WHEN THE
INCORPORATIONS FUNDS ON HAND EXCEED FIVE MILLION
DALLORS.

\*     \*     \*     \*     \*     \*     \*

(L)= THE EXECUTIVE DIRECTOR, OFFICERS, DIRECTORS,
TREASURE AND ALL MEMBERS SHALL AT ALL TIMES PROMOOT
EDUCATIONAL NUDIST CAMPS & ORGANIZATIONS FAMILY OR
SINGLE NUDISTS, AND THAT IN ACTS OF HARMLESS CONSENSUAL
SEX THAT ABSTANCE IS THE SAFEST WAY BUT THAT SEXUAL
EXPERIMENTATION IS A NATURAL ACT AND SAFE-SEX IS A
MUST, MEMBERS WILL ALSO PROMOOT THE ARTISTIC USE OF
HUMAN NUDITY YOUNG AND OLD, PLUES PROMOOT ALL OTHER OF
THE INCORPORATIONS PROGRAMS MEMSIONED SO FAR IN THESE
BY-LAWS AT HAND.

(M)= THE INCORPORATION SHALL HAVE A PRESS TO PUBLISH
ITS EDUCATIONAL AND SCIENTIFIC, ARTISTIC AND POLITICAL
MATERIALS, PLUES RELATED ITEMS TO DO WITH A PRESS
BUSINESS AND THIS SHALL BE ESTABLISHED SOON AS FUNDS
PRESENT THEMSELVES AND UNTIL THAT TIME THE INCORPORA-
TION WILL USE OTHER MEANS TO PUBLISH ITS MATERIALS.

(N)= THE EXECUTIVE DIRECTOR WILL ALSO BE RESPONSIBLE IN
EXECUTING SCIENTIFIC STUDIES & RESEARCH FOR USE IN
CARRING-OUT THE INCORPORATIONS GOALS AND AS NEED BE THE
EXECUTIVE DIRECTOR CAN EMPLOY ASSISTANCES IN CARRING-
)OUT THOES GOALS.

Around July 17, 2006, petitioner submitted to respondent
Form 1023, Application for Recognition of Exemption Under Section
501(c)(3) of the Internal Revenue Code (Form 1023), which Mr.
Risdal signed as petitioner's executive director.  In an attach-
ment to Form 1023, petitioner described its activities in perti-
nent part as follows:

To executive scientific study and research into the
pros and cons of decriminalizing natural consensual
sexual behaviors between adults and underagers and
decriminalizing what is defined as child pornography.
Such research and studies will consist from secondary
anaalysis a research method in which a researcher uses
data collected by others, also research and study will
be recorded from oral visitation and observation of
consenting participants, ALSO such studies and research
will include trips of travel world-wide and will be

executed by myself or by paid part-time employees or by volunteers.  Such study and research will also look into the relationship of forced abstinence and why it produces hateraid and violense in a majority of cases. Such findings or conclusive facts will be converted into an educational material form and will be distributed to the general public and legislatures for tconsideration for use in law reforming/repeals/ decriminalization/or for use in making new law bills.

Secondary programs will promoot safe sex; promoot friendship/peace and love undiscriminally world-wide; another program will advocate suicide preventions; another program will use any surplues funds to provide food in life or death situations to the hungary world-wide; Another program provides mentoring to any aged person whom either asks for mentoring or whom I feel is consenting to my mentoring and may better their need from it;Another program will advocate anti-illegal drugs.  Overall Mysteryboy Incorporations research and studies will show and tell the facts of how human-kind have naturally experimented in sexual behaviors with one-another and-with-other creatures or and material objects sense the beginning of time, Mysteeryboy incorporation (MBI) will in the futurer host a show and tell room of artifacts displaying nudity/sexual behaviors/etc. in statue or and in historic replicas staue and painting forms and in posible preserved cadaverous nude poses with educational material attachments.  Evidence of today factually shows a sharp increase in adult and underagers hateraided and violense as result of bills being made into law or by the strenghentened old sexual behavior and pornograpphy laws reforms that fruited from the policical haste from the 1980tys Ronald Reagan Administration's appointed Meese commission as a ouick-fix to remedy a small percentage of unconsenting human sexual behaviors that fruited a few victoms.While those well intended laws remedied a small percentage of those sex abuse cases those laws went-on to perpetually to victomize the general public at the larger percentage and today yet no one to my knowledge realizes the harms these precieved to be ex post facto laws have done and continue to do to society at large and its justice system that is nagativally effecting the UNITED STATES reputation and creditability country-wide.  AS A CLAIRVOYANT I HAVE THE GOD AND MOTHER_NATURES GIFT OF THE FUTURE

INSIGHT TO A SERIOUS PROBLEM THAT COULD EVENTUALLY HARM
THE UNITED STATES BEYOND REPAIR IF LEFT UNINTENDED.

In Form 1023, Mr. Risdal described his qualifications to be

petitioner's executive director as follows:

OUALIFICATIONS==Life-long Bisexual identy.  Creditable,
on former seasonal employment jobs I held management
positions.From 1976 till November 1985 I owned & oper-
ated myown profitable salage yard business with some
ten PART_TIME EMPLOYEES.  College diplomaed in graphic
arts and theology and ordained minister.I am
presently continuing my college rducation as a full
time student working to a degree in psychology and
social science.  I already oualified as a natural
scientist by my unioue life-long study and research as
an outgoing active bisexual who has been there done
that with all the differing sexual identified sexed
humans.formarally a boy scout and little leage baseball
player.  Life-long Iowa U.S.A. citizen.Mentored adults
and juvenile delinkouents for some 40ty years on-going
today.Legally operated and founded MBI, a disadvantaged
organization because of lack of funds and because I was
imprisoned from November 1985 through 2005 as a first
time felone on two counts of sex abuse (Its District
court documented on trial transcripts where the alleged
two teenaged male victoms testified under oath they
were not victoms and Eddie Risdal did not harm them on
the alleged two sexual behavior acts they consented to,
and they stated the hate-monger 300 some pound deputy
sheriff coercored them into perjury against E.Risdal by
putting his gun to their heads with death threats; the
prosecutor aggreed with the victoms testimoinie but
denyed any wrong doing by the deputy sheriff.  Offi-
cials fabricated those two criminal charges in retalia-
tion for E.Risdals' former criminal whistle-blowings
against that local sheriff, his deputies and prosecu-
tor, also E.RISDAL HAD A PENDING CIVIL SUIT FILED IN
THE U.S.District court that was nearing its docketed
jury trial date in December 1985, and because all law
enforcers preknew that sex offender crimes, regardless
of innocense or guilt is the easyest crime to obtain a
conviction on is why the civil suit defendants retali-
ated with the sex charges unstood of fabricating a
different type of crime.

Petitioner responded in the affirmative to the following question 8a in Part V of Form 1023: "Do you or will you have any leases, contracts, loans, or other agreements with your officers, directors * * *?" As a result of petitioner's answer to that question, petitioner was required to provide additional information in Form 1023, including a description of any written or oral arrangements that petitioner had made or intended to make and the identity of the persons with whom petitioner had made or intended to make any such arrangements. In this regard, petitioner stated:

> Any oral or written arrangements that I may make will be documented in MBI'S log book that is open to public inspection during MBI's business hours. I have logged past written oral arrangements in MBI'S logbook.

> * * * There exsists only one such oral written arrangement and it concerns soft and hard back books I purchased for MBIs' research & study purposes that become the property of MBI's library, and in that aggreement, MBI will compensate me for the exact value I paid out of myown pocket for those books in the event MBI receives a donation or grant to purchase books for its library and if MBI never receives such funds those books will forever remain the property of MBI's library.

Petitioner indicated in response to question 1a in Part VI of Form 1023 that, in carrying out its exempt purposes, it provided or intended to provide goods, services, or funds to individuals. However, petitioner did not, as required by Form 1023, "describe each program that provides [or will provide] goods, services, or funds to individuals."

Question 2a in Part VIII of Form 1023 asked petitioner: "Do you attempt to **influence legislation**? If 'Yes,' explain how you attempt to influence legislation". Although petitioner responded in the affirmative to that question, it did not explain how it attempted, or intended to attempt, to influence legislation.[3]

Petitioner indicated in Form 1023 that it intended to undertake fundraising but that it did not intend to do so "until after MBI is LEGALLY reconized from IRS AS A tax exempt charitable organization".

Petitioner responded in the affirmative to the following question 10 in Part VIII of Form 1023: "Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography, scientific discoveries, or other **intellectual property**?" In explaining that answer, petitioner stated:

> MBI IN THE near future plans to purchase a few artistic historic statue arts from a licensed dealer for display in MBI's show room. MBI will publish ITS OWN EDUCATIONAL BOOKS AND ARTWORKS THAT WILL BE COPY RIGHTED.MBI WILL PURCHASE OTHER ARTWORKS THAT OTHER PEOPLE HOLD THE COPYRIGHTS TO AND MBI WILL INCLUDE THEM IN ITS SHOW AND TELL ROOM.No admission fee will be charged for access to MBIs' show room and MBIs' copyrighted books will be given away free as a fund raising tool to carryout MBIs' programs. E.C.RISDAL is a practicing free-lance writer and artist.

---

[3]Petitioner indicated in response to question 2b in Part VIII of Form 1023 that it did not intend to make an election under sec. 501(h) to have its legislative activities measured by expenditures by filing Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation.

Petitioner responded in the affirmative to the following question 12a in Part VIII of Form 1023: "Do you or will you operate in a **foreign country** or **countries**?" In explaining that answer, petitioner stated:

> At this date no country is knowen as to where MBI may operate or if MBI will ever be financially able to operate in any foreign country to help in feeding the hungary, or to execute scientific study and research into its citizens sexual behaviors and governing laws pros and cons, and to promoot friendship/love and peace.

In describing how petitioner would operate in a foreign country, petitioner stated:

> Such collected information will be used in MBIs' educational advocacy and advocacy promooting friendship/love and peace will benefit all of the worlds human population from detering warfare, and by supplying foods and water to starving people is highly charitable.

Petitioner attached to Form 1023 a copy of an agreement between petitioner and Mr. Risdal. That agreement provided:

> CONTRACT AGGREEMENT, MYSTERYBOY INCORPORATION, (MBI), HEREBY AGGREES TO PAY ITS DIRECTOR EDDIE C. RISDAL THE EXACT AMOUNT IT PERSONALLY COST EC. RISDAL TO PURCHASE LIBRARY BOOKS FOR MBIs' LIBRARY AND RE-SEARCH AND STUDIES NEEDS AND EC. RISDAL AGREES TO LOCATE AND PURCHASE SUCH BOOKS WITH HIS OWN PERSONAL MONEY.POSTAGE OR OTHER SHIPPING COSTS WILL BE AMENDED TO THE BOOKS EXPENSE COST AND MBI WILL REINBURSE ONLY WHEN IT HAS THE FUNDINGS TO DO SO AND IF MBI NEVER RECEIVES SUCH FUNDING, E.C.RISDAL AGGREES TO LET MBI's LIBRARY TO KEEP SUCH BOOKS. (PERPETUAL AGGREEMENT.)

In other attachments to Form 1023, petitioner stated that "MYSTERYBOY Incorporation is inspired from GOD; MOTHER-NATURE AND

GOVERNMENT in its humanitarian works" and that "MYSTERYBOY Incorporation is pro-family values".

By letter to petitioner dated August 1, 2006, respondent acknowledged receipt of petitioner's Form 1023.

By letter to petitioner dated February 16, 2007 (respondent's February 16, 2007 letter), respondent stated in pertinent part:

> Before we can determine whether your organization is exempt from Federal income tax, we must have enough information to show that you have met all legal requirements.  You did not include the information needed to make that determination on your Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code.
>
> To help us determine whether your organization is exempt from Federal income tax, please send us the requested information by the above date [3/9/07].  We can then complete our review of your application.

In an attachment to respondent's February 16, 2007 letter, respondent stated in pertinent part:

> Additional Information Requested:
>
> The purpose of this request is to present the facts concerning your organization's application, and set forth the position of the Internal Revenue Service with respect to the application.  In addition, this request allows your organization the opportunity to present additional facts concerning your organization, and to submit court cases and revenue rulings in support of your organization's position.

>        *        *        *        *        *        *        *

**Application of Law:**

The organization Mysteryboy Incorporation was formed for the purpose of "working for law change." In addition, the organization's primary activity is to "research the pros and cons of decriminalizing sex between adults and minors and ... decriminalizing child pornography." The research is to be "converted into educational materials to be distributed to the general public and legislatures for consideration for use in law reforming/repeals/decriminalization/or use in making new law bills."

The facts of this case show that Mysteryboy Incorporation was organized and operating primarily for influencing a change in the laws concerning sexual exploitation of children.

**Conclusion:**

An organization organized and operating to influence legislation does not meet either the organizational or operational test for exemption under section 501(c)(3). In addition, the reforming/repealing and decriminalizing laws meant to protect children from sexual child abuse and sexual predators is contrary to public policy and would encourage illegal activity. Therefore, your organization would not be exempt under either IRC 501(c)(3) or (4).

If your organization is of the opinion that it qualifies for exemption from Federal income tax under section 501(c)(3) of the Code, please submit a written statement from a member of your organization's governing body explaining your organization's position. Please be sure to include revenue rulings and court cases in support of your organization's position.

Also attached to respondent's February 16, 2007 letter was a copy of an opinion of the Court of Appeals of the State of Iowa affirming Mr. Risdal's civil commitment as a sexually violent predator under Iowa Code Ann. ch. 229A (West 2006). That opinion stated in pertinent part:

Eddie C. Risdal was imprisoned for second and third-degree sexual abuse involving adolescents. Shortly before he was slated to discharge these sentences, the State petitioned to have him adjudicated a sexually violent predator subject to civil commitment. See Iowa Code chapter 229A (2003).  A jury determined that Risdal was a sexually violent predator.

On appeal, Risdal challenges the sufficiency of the evidence supporting the jury's finding, as well as certain evidentiary rulings and a related jury instruction.  We affirm.

## I.  Sufficiency of the Evidence-Directed Verdict

A "sexually violent predator" is defined as,

a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

Iowa Code § 229A.2(11).  "Mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others."  Id. at § 229A.2(5).

At the close of the State's evidence, Risdal moved for a directed verdict, contending that the State failed to prove he suffered from a mental abnormality. The district court overruled Risdal's motion.  Risdal takes issue with this ruling.  He maintains there was insufficient evidence to establish that he was attracted to adolescent boys "solely because of their chronological ages" or that his attraction was "pathological, disordered, or abnormal."

Our review of challenges to the sufficiency of the evidence is for errors of law, with fact findings binding us if supported by substantial evidence.  See In re Detention of Swanson, 668 N.W.2d 570, 574 (Iowa 2003).

The State proffered an expert witness, Dr. Dennis Doren, who opined that Risdal had two mental abnormalities - (1) paraphilia not otherwise specified (NOS), in the form of hebephilia, and (2) personality disorder NOS, with antisocial and narcissistic features, both of which caused Risdal to more likely than not commit sexually violent offenses.

Dr. Doren stated the first abnormality, paraphilia, is a disorder of sexual arousal other than by a consenting adult and hebephilia is a form of paraphilia that involves sexual attraction to adolescents. Dr. Doren diagnosed Risdal with this disorder based on his convictions and charges for sexual abuse with adolescents, Risdal's admission that he had sexual contact with at least one adolescent, and Risdal's formation of a corporation known as Mystery Boy, Inc. with a stated purpose of advocating for reform and repeal of sex abuse laws.

Dr. Doren opined that hebephilia affected Risdal's volitional process by limiting the degree to which he saw the potential consequences of his actions and by impairing his ability to maintain relationships. He testified that Risdal's condition affected him so significantly that he had serious difficulty in controlling his sexual behavior with adolescents.

Dr. Doren's second diagnosis of personality disorder with antisocial and narcissistic features was based on Risdal's history of arrests, disciplinary reports in prison, fighting in prison, reckless driving, and a belief that his sexual behavior was not a problem. Narcissistic features were reflected in Risdal's belief that people viewed him as "Mother Teresa," his belief that ninety percent of Story County residents liked him, which made the county sheriff jealous, his belief that people turned to him to fight corruption, and Risdal's description of himself as a professional sexologist with years of sexual study.

The State also elicited testimony directly from Risdal on the "mental abnormality" element. Risdal admitted to sexual contact with a fifteen-year-old boy. He also admitted to what he characterized as consensual activities with other boys as young as eleven years old. He conceded some of these activities may have involved incidental contact of a sexual nature. Risdal

additionally provided a detailed exposition of his views on sex abuse and sex abuse laws.  The following exchange is illustrative:

Q....Can I glean from what you said that you don't believe that sex between adults and children is harmful to children?  A.  Not in all cases it ain't, and that's been factually verified by psychologists, psychiatrists and several professionals.

Q.  In fact, you believe that sex between children and adults could actually be helpful to them.  Don't you?  A.  Yes, I do.  Statistics show that.  It's hard for me to seat up - to sum up backing my Mystery Boy Incorporation and what it's discovered in its - I classify myself as a unique expert in scientific, natural scientific study in human sexuality, and I follow the famous sex therapist Simon Foyd [sic], and there's another one there.

Q.  But, sir, let's focus on that.  You actually have done writings.  I have got one of them here, where you think that if sex between adults and children were allowed that there would be - that you wouldn't have serial killers.  Isn't that right?  A.  Yes.  That's right.
* * *

Q.  So, you are saying that we wouldn't have serial murderers or parents who murder their children if we just allowed sex between kids and adults.  Is that right?  A.  Yes.
* * *

Q.  (reading from one of Risdal's writings) The point I think you are making, and also that this thing is making, is where it says here at the bottom, starting right here, "Thousands of kids would die yearly from either murder, suicide, physical abuse, neglect, hunger if not for the concerned and caring pedophile."  Is that your belief system, sir?  A.  It is my belief, and that's factually backed up by histography [sic] of government records.

This evidence was sufficient to establish that Risdal had a mental abnormality. State v. Millsap, 704 N.W.2d 426, 430 (Iowa 2005).

We reach this conclusion notwithstanding the testimony of defense expert, Dr. Luis Rosell. Dr. Rosell concurred in Dr. Doren's opinion that Risdal suffered from a mental abnormality, but disagreed with the diagnosis of hebephilia. He also stated he did not believe that Risdal's abnormality predisposed him "to commit future acts of sexual violence if he's not confined in a secure facility." On this score, Dr. Rosell's opinion was less than unequivocal. He opined, "I think the issue of his mental disorder needs to be cleared up before we can really make an accurate determination." The jury was free to afford less weight to this opinion than to Dr. Doren's testimony. State v. Shultz, 231 N.W.2d 585, 587 (Iowa 1975) ("The trier of fact is not obliged to accept opinion evidence, even from experts, as conclusive. It may be accepted in whole, in part, or not at all."). [Fn. refs. omitted.]

In a letter to respondent dated February 23, 2007 (petitioner's February 23, 2007 letter), petitioner responded to respondent's February 16, 2007 letter. That letter stated in pertinent part:

IN CONSPIRACY IOWA"S ATTORNEY GENERAL HAS FALSELY INPRISONED ME AS A FIRST TIME FELONE FOR OVER 22-YEARS ONGOING TODAY FOR PERSONAL FINANCIAL GAIN MOTIVES AND THE TWO COUNTS OF SEX ABUSE CHARGES WERE FABRICATED FOR THE PURPOSE OF OF DECEITING THE GENERAL PUBLIC AND THE APPEALS COURTS THAT IOWA"S ATTORNEY GENERAL WHO IS IN CONSPIRACY WITH A FORMER DECEASED SMALL COUNTY SHERIFF & FORMER COUNTY PROSECUTOR WHO"S FORMER ASSISTANT IS NOW THAT COUNTIES HEAD PROSECUTOR. * * * ANOTHER FACT IS THE ATTORNEY GENERAL PROSECUTOR FORMARALLY CITED THE MBI DURING MY PRIOR PROBABLE CAUSE HEARING COURT TRIAL AND ALSO DURING MY LATER CIVIL JURY TRIAL SO THE FACT IS I HAD NO CHOICE BUT TO GIVE MY AND DEFENSE FOR MBI DURING THOSE TRIALS.ANOTHER FACT IS MBI WAS NOT FOUNDED FOR MYOWN PERSONAL USE & GAIN THE FACT MY SEXUAL CON- VICTION CASE IS ONE CASE OUT OF MILLIONS OF OTHER ADULTS AND JUVENILES SEXUAL ABUSE CRIMINAL AND CIVIL CASES THAT HAVe OCCURED OVER THE LAST 30ty SOME YEARS

ACCROSS THE UNITED STATES, PLUES MBI EDUCATIONAL GOAL
IS AIMED AT EVERY HUMAN BEING IN THE WORLD AND IT IS
NOT AIMED SOLELY AT THOSE WHO ARE OR HAVE BEEN ACCUSED
OF CONVICTED AT SEXUAL CRIMES. * * * THE ORIGINAL
ARREST AND PROSECUTION CRIMINAL TRANSCRIPTS FACTUALL
STATES I WAS PROSECUTED ON TWO COUNTS OF SEX
ABUSE,COUNT ONE HAD ONE MALE TEENAGED MALE JUVENILE
DELINQUENT VICTOM WITH ONE ALLEGED SEXUAL BEHAVIOR
ACT,COUNT TWO HAD ONE MALE JUVENILE DELINQUENT VICTOM
AND ONE ALLEGED SEXUAL BEHAVIOR ACT, AT TRIAL NO ONE
COULD GIVE AN ALIBI DEFENSE OF THE TIME, DATE, & EXACT
LOCATION THE TWO SEX ACTS OCCURED, NO ONE COULD
FACTUALL THE KIND OF SEX ACTS THAT WERE ALLEGED,UNDER
OATH THE VICTOMS TESTIFIED TO THE JURY THEY WERE NOT
VICTOMS, NO HARM WAS DONE THEM, AND DAYS PRIOR
E.C.RISDAL"S ARREST THE SHERIFF HAD INDIVIDUAlly SE-
CLUDED EACH OF THE TO BECOME VICTOMS IN HIS OFFICIAL
CAR, PUT A GUN TO THEIR HEADS,COERCORED THEM TO SAY
THEY HAD SEX WITH E.C.RISDAL,(THE COUNTY PROSECUTOR AND
EVEN THE PRESIDING JUDICIAL TOLD THE JURY THEY AGGREED
WITH THE TWO VICTOMS TESTIMONY UP TO THE EXTENT OF THE
SHERIFF COERC-ORING BOTH VICTOMS PRIR TRIAL. * * * ALSO
TO CLEARIFY I DO NOT HAVE ANY PAST FELONY RECORD OTHER
THEN THOSE TWO FELONIES THAT RESULTED FROM A SAME
INCIDENT OF WHICH I WAS CONVICTED OF IN 1986 BY A
TINTED JURY.also fact BOTH THOSE FORMER TWO CRIMINAL
CHARGES I WAS LATER CONVICTED ON WERE CONSOLAGATED AT
THE ONE JURY TRIAL AND AT THE LATER SENTENCING TRIAL I
WAS SENTENCED CONSECTUTIVELY.

     *       *       *       *       *       *       *

ALSO FACT,AS A NATURAL SCIENTIST WHO HAS DISCOVERED
SCIENTIFIC AND OTHER EVIDENSE FACTS THAT PROVE BEYOND
DOUBT THAT THERE IS A MANDATORY NEED TO PRESERVE HUMAN
SEXUAL EXPERIMENTATIONS OF HUMAN KIND REGARDLESS OF AGE
INDIFFERENCES,AND THAT SOME GOVERNMENTAL MADE SEXUAL
LAWS THAT PROHIBIT SUCH NATURAL ACTS OF CONSENSUAL
SEXUAL BEHAVIORS ARE ON A DESTRUCTIVE COURSE THAT IS
FASTLY DESTROYING SOCIETIES BEST INTERESTS AT LARGE AND
SUCH AS BEARING FRUIT OF HATE AND VIOLENSE PUTTING
HUMAN BEING AGAINST ANOTHER HUMAN BEING.  SHOULD MBI
REPRESS THIS INPORTANT INFORMATION FROM HIS FELLOW
HUMAN BEINGS OR IS MBI EITHER BY SELF-CONSCIENSE OR BY
THE LAWS MBI IF ORGANIZED UNDER BE MANDATED TO GIVE
SUCH EDUCATIONAL INFORMATION TO THE GENERAL PUBLIC AT
LARGE?  I DON"T KNOW ABOUT YOU BUT MY CONSCIENCE WILL
NOT ALLOW ME TO BE SILENCED JUST BECAUSE WE ARE LIVING

IN A TIME IN GENERATION WHEN ITS POLITICAL POPULAR TO NOT ROCK THE SEXUAL PROHIBITATION BOAT * * *.

IN REFERENCE TO THE 11=PAGED COURT OF IOWAS AP-PEALS ATTACHED * * * [to respondent's February 16, 2007 letter], I CAN SEE NO REASON TO GIVE MUCH CREDIBILITY TO IT NOR TO GIVE MUCH FEEDBACK, THE FACT I DISCONTIN-UED MY ATTORNEY CLIANT RELATIONSHIP WITH THAT CORRUPTED PUBLIC DEFENDER AT THE DATE OF MY CIVIL CONVICTION JURY TRIAL, THEREFORE I HAD NO PARTICIPATION IN THAT AT-TACHED CIVIL APPEAL NOR DID I AGGREE TO THE GROUNDS THAT PUBLIC DEFENDER RAISED FOR HE REPRESSED THE GROUNDS FOR RELIEF THAT HE KNEW I WANTED FILED BECAUSE MY GROUNDS HAD THEY BEEN RAISED ON THAT FIRST APPEAL WOULD OF GOT MY CONVICTION JUDGEMENT VACATED. * * *

    *     *     *     *     *     *     *

* * * MBI FACTUALLY IS A EDUCATIONAL ORGANIZATION AND ITS IN THE PREVENTION OF CRUELTY TO CHILDREN AND ADULTS, MBI"S EDUCATIONAL ADVOCACY IS DIRECTED TO SOCIETY AT LARGE,THERE IS NO DIRECT INFLUENCE TO LEGIS-LATION, THE FACT MBI IS MANDATED BY LAW TO MAKE ITS FINANCIAL LOG BOOKS OPEN TO THE GENERAL PUBLIC, MBI IS LICENSED TO BE AN EDUCATIONAL ADVOCAY, THERE IS NO WAY HUMANALLY POSIBLE TO STOP A LEGISLATURE FROM READING MBI"S EDUCATIONAL MATERIALS IF SHE OR HE DECIDES TO TAKE IT ON THEMSELFS TO READ OR VIEW IT, INFACT IT WOULD VIOLATE A LEGISLATURES CONSTITUTIONAL AMENDMENT GARNTES IF MBI ATTEMPTED TO PROHIBIT A LEGISLATURE FROM READING OR VIEWING MBI"S EDUCATIONAL MATERIALS, THAT WOULD BE LIKE SAYING LEGISLATURES ARE PROHIBITED FROM READING THE DAILY NEWSPAPERS, OR FROM SEEKING-OUT SCIENTIFIC FACTS FROM SCIENTISTS & EXPERTS THAT SHOULD BE USED IN THE CONSIDERATION OF MAKING UNRESEARCHED BILLS INTO LAWS.  AS DIRECTOR, IT HAS NEVER BEEN IN MY PLANNING TO RECEIVE A WAGE,OR USE MBI"S EARNINGS TO THE BENEFIT OF ANY PRIVATE SHAREHOLDER OR INDIVIDUAL, MBI HAS NEVER WILL NEVER BE IN THE PROPAGANDA BUSINESS, ANY EDUCATIONAL STATEMENTS FROM MBI CAN BE DEFENDED WITH EITHER SCIENTIFIC FACTS OR FROM SECONDARY FACTS FROM GOVERNMENTAL PUBLIC FILES OR OTHER EXPERTS FILES,ETC.

    *     *     *     *     *     *     *

* * * MBI IS AN EDUCATIONAL ORGANIZATION,MBI"S EDUCA-TIONAL STATEMENTS FRUIT FROM PAST & PRESENT SCIENTIFIC STUDY & RESEARCH MBI EITHER DOES ITSELF OF IN ANOTHER

PERCENTAGE SUCH COMES FROM SECONDARY SCIENTIFIC STUDY &
RESEARCH EXECUTED FROM OTHER PROFESSIONABLES.  THERE-
FORE MBI IS AN EDUCATIONAL & SCIENTIFIC ORGANIZATION
THAT DOES SATISFY THE PURPOSES OF SUCH ORGANIZATION
UNDER THIS LAW CITED ABOVE ON THIS PAGE AT HAND.

    *      *      *      *      *      *      *

* * * MBI WAS ORGANIZED AND IS OPERATING PRIMARILY NOT
FOR INFLUENCING A CHANGE IN THE LAWS CONCERNING SEXUAL
EXPLOITATION OF CHILDREN,MBI WAS AND IS ORGANIZED TO
EXECUTE NATURAL SCIENTIFIC STUDY & RESEARCH ON THE PROS
AND CONS OF HUMAN SEXUAL BEHAVIORS AND TO CONVERT THE
CONCLUSIVE FINDINGS INTO EDUCATIONAL MATERIALS AND
ADVOCACY AND TO MAKE SUCH AVAILABLE TO THE GENERAL
PUBLIC AT LARGE WORLDWIDE.

    *      *      *      *      *      *      *

MBI DOES NOT PROMOOT SEXUAL BEHAVIORS NOR DOES IT
PROMOOT OR ENGAGE IN ANY ILLEGAL ACTS.  MBI HAS ALWAYS
PROMOOTED ABSTINENCE,BUT NOW IT MAY DISCONTINUE THAT
PROGRAM BECAUSE IT TO CAN BE SAID TO INFLUENCE A CHANGE
IN THE LAWS.  AND SO WHEre WILL THE IRS CENSORING STOP,
IF THE IRS EQUALLY ENFORCED ITS LAW ON INFLUENCING A
CHANGE IN LAW ON THE UNDISADVANTAGE AND THE ADVANTAGED
ORGANIZATIONS EQUALLY THERE WOULD BE NO ORGANIZATIONS
THAT WOULD QUALIFY FOR IRS EXEMPTIONS.

An Internal Revenue Service (IRS) facsimile coversheet dated

March 7, 2007, and addressed to Mr. Risdal stated in pertinent

part:

Thank you for your response [petitioner's February 23,
2007 letter] to our letter dated February 16, 2007.
Your position on the tax law will be included in the
proposed denial letter to be prepared in reference to
your Form 1023 Application.  I attempted to call and
explain your appeal rights.  However, the contact phone
number was picking up a fax signal on your end.  There-
fore, this fax is being sent to explain that a proposed
denial of exemption will be prepared and you will have
the opportunity to address the facts, law and applica-
tion of tax law in response to the letter.  You also
have the right to appeal the proposed denial and meet

with an appeals officer.  Further information will be sent to you in regards to the appeal process. * * *

In a letter to petitioner dated August 3, 2007 (respondent's August 3, 2007 letter), respondent notified petitioner that, based on the information provided, respondent had concluded that petitioner did not qualify for exemption under section 501(a) as an organization described in section 501(c)(3).  Respondent's August 3, 2007 letter informed petitioner that it had the right to file a protest if it believed that the determination in that letter was incorrect and that any such protest had to be submitted within 30 days from the date of respondent's August 3, 2007 letter.

In support of its determination that petitioner does not qualify for exemption under section 501(a) as an organization described in section 501(c)(3), respondent stated in pertinent part in respondent's August 3, 2007 letter:

> IRC § 501(c)(3) of the Code exempts from federal income tax corporations organized and operated exclusively for charitable, educational, and other purposes, including the prevention of cruelty to children.  **A**[4] was not formed for any charitable or educational purpose but was formed to sexually exploit children by promoting the repeal of child pornography and exploitation laws.
>
> **A** was formed for the purpose of "working for law change."  In addition, the organization's primary activity is to "research the pros and cons of decriminalizing sex between adults and minors and decriminalizing child pornography."  The research is to be "con-

---

[4]The reference in respondent's August 3, 2007 letter to "**A**" was to petitioner.

verted into educational materials to be distributed to
the general public and legislatures for consideration
for use in law reforming/repeals/ decriminalization/or
use in making new law bills."

The application Form 1023 articulates the organiza-
tion's primary activity and purpose is to decriminalize
or change laws that prohibit the sexual exploitation of
a minor.  In addition, the policy "working for law
change concerning the rights of sexual active consent-
ing kids and adults" is stated in the purpose clause of
the organizing documents.  Therefore, the purpose for
which the organization is formed is contrary to public
policy to protect the sexual exploitation of children.

The purpose clause in **A**'s organizing document does not
meet the organizational test.  IRC § 501(c)(3) states
that exempt purposes include the prevention of cruelty
to children and that no part of its net earnings inures
to the benefit of any private shareholder or individual
and no substantial part of the activities of which is
carrying on propaganda, or otherwise attempting to
influence legislation.

The Bylaws provide **D**[5] a lifetime position as Executive
Director to ensure the furtherance of the organiza-
tion's purpose and goals.  Court documents report the
founder's views are in favor of sex between children
and adults and that the formation of **D**'s corporation **A**
is to work towards reform and repeal of sex abuse laws.
The court documents and decision to affirm the classi-
fication that **D** is a violent sexual predator supports
the fact that **D** formed **A** to change laws that adversely
affect the founder of **A**.  Therefore, the formation of a
corporation to work towards reforming laws to legalize
sexual abuse of minors is for the private benefit of
the founder and not in furtherance of a charitable
purpose.

US Code Title 18 § 2251 prohibits the sexual exploita-
tion of a minor.  The purpose and activities of the
organization involve the purposeful sexual exploita-
tions of minors.

---

[5]The reference in respondent's August 3, 2007 letter to "**D**"
was to Mr. Risdal.

Like the organization in Revenue Ruling 75-384 that did not qualify for 501(c)(3) or 501(c)(4) exemption, this organization encourages individuals to violate the law.

\* \* \* \* \* \* \*

The applicant's position that **A** is educational and not organized and operating for influencing a change in the laws does not agree with the stated purposes for which the organization was formed.

The purpose clause in the Articles of Incorporation says that the corporation was organized to "<u>work</u> <u>for</u> <u>law</u> <u>change</u> <u>to</u> <u>protect</u> <u>the</u> <u>rights</u> <u>of</u> <u>sexual</u> <u>active</u> <u>consenting</u> <u>kids</u> <u>and</u> <u>adults</u> <u>and</u> <u>to</u> <u>amend</u> <u>child</u> <u>sexual</u> <u>photography</u> <u>law</u>."

The application states that the activities include the study and research into the pros and cons of decriminalizing what is defined as child pornography. To decriminalize child pornography the organization's activities would require working for law change as stated in **A**'s organizing documents.

The Founder is the sole officer and the Executive Director. Provisions in the bylaws say that the Executive Director is responsible in carrying out the corporation's goals and the Executive Director position is for the life time of that individual.

The **B**[6] Court of Appeals records referred to in the additional information requests show that the founder formed **A** with a stated purpose of advocating for reform and repeal of sex abuse laws. In the documented statements the founder stated that statistics discovered by **A** shows that sex between children and adults is beneficial to society. The court affirmed **D**'s classification as a sexually violent predator. The public court records provide further evidence that **D**'s purpose for forming **A** is to work for law changes that support **D**'s criminal defense. The Founder's position that the **B** Attorney General and the Department of Corrections are

---

[6]The reference in respondent's August 3, 2007 letter to "**B**" was to the State of Iowa.

in conspiracy to destroy **A** are only accusations and are not found to be factual statements in the courts.

    *       *       *       *       *       *       *

The organization's primary activity and purpose is to decriminalize or change laws that prohibit the sexual exploitation of minors.  The Founder, sole officer and Executive Director of the organization, **D**, has been affirmed by the U.S. Court system as a violent sexual predator.

IRC § 501(c)(3) of the Code exempts from federal income tax corporations organized and operated exclusively for charitable, educational, and other purposes, including the prevention of cruelty to children.  **A** was not formed for any charitable or educational purpose but was formed to sexually exploit children by promoting the repeal of child pornography and exploitation laws. US Code Title 18 § 2251 prohibits the sexual exploitation of a minor.  The purpose and activities of the organization involve the purposeful sexual exploitations of minors.

Accordingly, **A** does not qualify for exemption under Section 501(c)(3) of the Code.

Petitioner submitted a protest (petitioner's protest) to respondent's August 3, 2007 letter, which the IRS received on August 16, 2007.  In petitioner's protest, petitioner stated in pertinent part:

Mysteryboy Incorporation whereas Mysteryboy Incorporation [MBI], is a scientific organization who's aim is to promoot & preserve sexual liberties while promooting friendship, peace & love worldwide.

    * * * the IRS & Government are not qualified scientific experts in the study & research of human sexual behaviors & the suspected relationship that forced abstinence & policed sexual behaviors fruit hatered & violence of which is harming the traditional families at a large percentage.

MBIs program is not a personal program that only caters to Eddie C. Risdal for its "FACT" MBIs program caters to every human beings best interest in the world, and MBI carrys out its educational scientific programs in a lawful manner whereas no one is harmed, and in its long goal program it will benefit every person.

\* \* \* \* \* \* \*

"FACT": Regardless of one's age all human beings are amanalistic sexual creatures and no expert can ethically advocate otherwise.

A majority of citizens have oppinions on whats considered moralistic & what is legal by law [government law; God's law.] But in majority those citizens oppinions have no scientific merit & in most cases those mystic oppineons cause great harm & undue sufferings to the general public at large when it involves the pros & cons of human sexual behaviors. In some cases the general public at large need to be rescued from their own ignorance, and this is MBI's goal. \* \* \*

While MBI cited more than one program to IRS, MBIs number one program is educational advocacy based from MBIs & others scientific studies & researches. So if IRS Code mandates only one program, MBI will simply annul its other programs, the fact MBIs secondary programs were not party in its original Iowa certificate applying. So now IRS can document MBI as an Educational scientific advocacy organization.

In a letter to petitioner dated August 27, 2007, respondent acknowledged receipt of petitioner's protest and informed petitioner that respondent's Appeals Office responsible for petitioner's protest would contact petitioner to arrange a mutually agreeable time and place for a conference regarding that matter.

By letter to petitioner dated October 15, 2007, respondent's Appeals Office in Baltimore, Maryland (Baltimore Appeals Office), indicated that it had received petitioner's protest. In a letter

to petitioner dated November 15, 2007 (Baltimore Appeals Office November 15, 2007 letter), the Baltimore Appeals Office informed petitioner that it had unsuccessfully attempted to contact petitioner at the telephone number for Mr. Risdal that had been provided to respondent. That letter further informed petitioner that the conference that it had requested in petitioner's protest was scheduled for 10 a.m. on November 28, 2007. The Baltimore Appeals Office November 15, 2007 letter further stated in pertinent part:

> **Please let me know within 10 days from the date of this letter whether this is convenient. If it is not, I will be glad to arrange another time.**
>
> **Please be advised that if you do not call me for the conference as scheduled above or contact me prior to the scheduled conference to schedule another conference date, I will close your case based on the information contained in the administrative case file. This letter will also be made part of the administrative case file.**
>
> Our meeting will be informal and you may present facts, arguments, and legal authority to support your position. If you plan to present or discuss new material, please send me copies at least five days before our meeting. * * *

On March 21, 2008, respondent sent a final adverse determination to petitioner. That determination letter stated in pertinent part:

> This is a final adverse determination as to your exempt status under section 501(c)(3) of the Internal Revenue Code. It is determined that you do not qualify as exempt from Federal income tax under Section 501(c)(3) of the Internal Revenue Code, effective December 1, 2003.

Our adverse determination was made for the following reason(s):

Based on the facts and information submitted, you are not operated exclusively for exempt purposes as is required under I.R.C. section 501(c)(3).

Based on the facts and information submitted, your purposes are contrary to a fundamental public policy.

\*　　\*　　\*　　\*　　\*　　\*　　\*

If you decide to contest this determination under the declaratory judgment provisions of code section 7428, a petition to the United States Tax Court, the United States Court of Claims, or the district court of the United States for the District of Columbia must be filed before the 91st (ninety-first) day after the date this determination was mailed to you. \* \* \*

## Discussion

Before determining whether petitioner is exempt from tax as an organization described in section 501(c)(3), we shall set forth the legal principles that control that determination.

Section 501(a) exempts from tax organizations described in, inter alia, section 501(c)(3).  As pertinent here, organizations described in section 501(c)(3) include

Corporations \* \* \* organized and operated exclusively for religious, charitable, scientific, \* \* \* literary, or educational purposes, \* \* \* or for the prevention of cruelty to children \* \* \* no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)) \* \* \*.

An organization is organized exclusively for one or more purposes specified in section 501(c)(3) only if its articles of organization (articles) (1) limit the purpose of such organization to one or more purposes specified in that section and (2) do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities that in themselves are not in furtherance of one or more of those purposes. Sec. 1.501(c)(3)-1(b)(1)(i), Income Tax Regs.

An organization is not organized exclusively for one or more purposes specified in section 501(c)(3) if its articles expressly empower it to carry on, otherwise than as an insubstantial part of its activities, activities that are not in furtherance of one or more of those purposes, even though the organization is, by the terms of its articles, created for a purpose that is no broader than the purposes specified in section 501(c)(3). Sec. 1.501(c)(3)-1(b)(1)(iii), Income Tax Regs. An organization will not meet the organizational test as a result of statements or other evidence that the members thereof intend to operate only in furtherance of one or more of the purposes specified in section 501(c)(3). Sec. 1.501(c)(3)-1(b)(1)(iv), Income Tax Regs.

An organization is not organized exclusively for one or more of the purposes specified in section 501(c)(3) if its articles expressly empower it to devote more than an insubstantial part of its activities in attempting to influence legislation by propa-

ganda or otherwise or to have objectives and to engage in activities that characterize it as an action organization as defined in section 1.501(c)(3)-1(c)(3), Income Tax Regs.  Sec. 1.501(c)(3)-1(b)(3)(i), (iii), Income Tax Regs.

An organization will be treated as operated exclusively for one or more purposes specified in section 501(c)(3) only if it engages primarily in activities that accomplish one or more of those purposes.  An organization will not be regarded as operated exclusively for one or more purposes specified in section 501(c)(3) if more than an insubstantial part of its activities is not in furtherance of one or more of those purposes.  Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.

An organization is not operated exclusively for one or more purposes specified in section 501(c)(3) if it is an action organization as defined, inter alia, in section 1.501(c)(3)-1(c)(3)(ii) or (iv), Income Tax Regs.

Under section 1.501(c)(3)-1(c)(3)(ii), Income Tax Regs., an organization is an action organization if a substantial part of its activities is attempting to influence legislation by propaganda or otherwise.  For this purpose, an organization is to be regarded as attempting to influence legislation if the organization (1) contacts, or urges the public to contact, members of a legislative body for the purpose of proposing, supporting, or opposing legislation or (2) advocates the adoption or rejection

of legislation.  Id.  An organization will not fail to meet the operational test merely because it advocates, as an insubstantial part of its activities, the adoption or rejection of legisla-tion.[7]  Id.

Under section 1.501(c)(3)-1(c)(3)(iv), Income Tax Regs., an organization is an action organization if it has the following two characteristics:  (1) Its main or primary objective or objectives (as distinguished from its incidental or secondary objectives) may be attained only by legislation or a defeat of proposed legislation; and (2) it advocates, or campaigns for, the attainment of such main or primary objective or objectives as distinguished from engaging in nonpartisan analysis, study, or research and making the results thereof available to the public. In determining whether an organization has those characteristics, all the surrounding facts and circumstances, including the articles and all the activities of the organization, are to be considered.  Id.

As pertinent here, an organization generally may be exempt from tax as an organization described in section 501(c)(3) if it is organized and operated exclusively for one or more of the

---

[7]An organization for which the expenditure test election of sec. 501(h) is in effect for a taxable year will not be considered an action organization under sec. 1.501(c)(3)-1(c)(3)(ii), Income Tax Regs., if it is not denied exemption from taxation under sec. 501(a) by reason of sec. 501(h).  In Form 1023, petitioner indicated that it did not intend to make an election under sec. 501(h).

following purposes:  Religious, charitable, scientific, literary, educational, or prevention of cruelty to children.  Sec. 1.501(c)(3)-1(d)(1)(i), Income Tax Regs.  An organization is not organized or operated exclusively for one or more of the foregoing purposes unless it serves the public rather than a private interest.  In other words, in order to be organized and operated exclusively for one or more purposes specified in section 501(c)(3), an organization must establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or the creator's family, or persons controlled, directly or indirectly, by such private interests.  Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.

The term "charitable" in section 501(c)(3) is used in its generally accepted legal sense.  Therefore, that term is not to be construed as limited by the separate enumeration in that section of other purposes that may fall within the broad outlines of "charity" as developed by judicial decisions.  Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs.  As pertinent here, the term "charitable" in section 501(c)(3) includes:  Advancement of education or science; lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the foregoing purposes or (1) to eliminate prejudice and discrimination or (2) to defend human and civil rights secured by law.  Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs.  If,

in carrying out its primary purpose, an organization advocates social or civic changes or presents an opinion on controversial issues with the intention of molding public opinion or creating public sentiment to an acceptance of its views, that fact does not preclude the organization from qualifying under section 501(c)(3) as long as it is not an action organization as defined in section 1.501(c)(3)-1(c)(3), Income Tax Regs. Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs.

The term "educational" in section 501(c)(3) relates to the instruction or training of the individual for the purpose of improving or developing the individual's capabilities or the instruction of the public on subjects useful to the individual and beneficial to the community. Sec. 1.501(c)(3)-1(d)(3)(i), Income Tax Regs. An organization may be educational even though it advocates a particular position or viewpoint so long as it presents sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. Id. However, an organization is not educational if its principal function is the mere presentation of unsupported opinion. Id.

An organization may meet the requirements of section 501(c)(3) only if it serves the public rather than a private interest. Sec. 1.501(c)(3)-1(d)(5)(i), Income Tax Regs. Therefore, a scientific organization must be organized and operated in

the public interest in order to qualify as an organization organized and operated exclusively for scientific purposes within the meaning of section 501(c)(3).  Id.  Consequently, the term "scientific" in section 501(c)(3) includes the carrying on of scientific research in the public interest.  Id.  Research when taken alone is a word with various meanings.  It is not synonymous with "scientific"; and the nature of particular research depends on the purpose which it serves.  Id.  In order for research to be scientific within the meaning of section 501(c)(3), it must be carried on in furtherance of a scientific purpose.  Id.  The determination of whether research is scientific does not depend on whether the research is classified as "fundamental" or "basic" as contrasted with "applied" or "practical".  Id.

As pertinent here, scientific research will be regarded as carried on in the public interest if (1) the results of the research are made available to the public on a nondiscriminatory basis or (2) the research is directed toward benefiting the public.  Sec. 1.501(c)(3)-1(d)(5)(iii)(a), (c), Income Tax Regs. Examples of scientific research that will be considered as directed toward benefiting the public and that therefore will be considered as carried on in the public interest are scientific research carried on for the purpose of obtaining scientific information, which is published in a treatise, thesis, trade

publication, or in any other form that is available to the interested public. Sec. 1.501(c)(3)-1(d)(5)(iii)(c)(2), Income Tax Regs.

As pertinent here, an organization will not be regarded as organized and operated for the carrying on of scientific research in the public interest if the organization will perform research only for persons that are directly or indirectly its creators and that are not described in section 501(c)(3). Sec. 1.501(c)(3)-1(d)(5)(iv)(a), Income Tax Regs.

The presence of a single substantial purpose that is not described in section 501(c)(3) precludes exemption from tax under section 501(a) regardless of the number or the importance of the purposes that are present and that are described in section 501(c)(3). Better Bus. Bureau v. United States, 326 U.S. 279, 283 (1945); Copyright Clearance Ctr., Inc. v. Commissioner, 79 T.C. 793, 804 (1982).

The determination of (1) an organization's purposes and (2) the purposes the organization's activities support are questions of fact. See Pulpit Res. v. Commissioner, 70 T.C. 594 (1978). In reviewing the administrative record in proceedings under section 7428(a), the Court may draw factual inferences from the entire administrative record. Natl. Association of Am. Churches v. Commissioner, 82 T.C. 18, 20 (1984). In order to determine whether the purposes of an organization are described

in section 501(c)(3), it is necessary to examine the actual purposes that the organization's activities are intended to accomplish, and not only the nature of the activities of the organization or its statement of purpose.  See Living Faith, Inc. v. Commissioner, 950 F.2d 365, 370 (7th Cir. 1991), affg. T.C. Memo. 1990-484; Am. Campaign Acad. v. Commissioner, 92 T.C. 1053, 1064 (1989).

If an organization is engaged in a single activity directed at achieving various purposes, some of which are described in section 501(c)(3) and some of which are not described in that section, the organization will fail the operational test where the purpose not described in that section is more than insubstantial.  Redlands Surgical Servs. v. Commissioner, 113 T.C. 47, 71 (1999), affd. 242 F.3d 904 (9th Cir. 2001).

In determining whether an organization complies with the operational test of section 501(c)(3), it is necessary to look beyond the organization's articles in order to ascertain "'the actual objects motivating the organization and the subsequent conduct of the organization.'"  Taxation With Representation v. United States, 585 F.2d 1219, 1222 (4th Cir. 1978) (quoting Samuel Friedland Found. v. United States, 144 F. Supp. 74, 85 (D.N.J. 1956)); see also Christian Manner Intl., Inc. v. Commissioner, 71 T.C. 661, 668 (1979).

We shall now determine whether petitioner was organized and will be operated exclusively for one or more purposes specified in section 501(c)(3).  Petitioner's articles state that it was organized for the purpose of "working for law change to protect the rights of sexual active consenting kids and adults".  Both Federal and State laws exist for the purpose of prohibiting the sexual exploitation and other abuse of children.  See, e.g., 18 U.S.C.A. secs. 2251-2260A (West 2000 & Supp. 2009); Iowa Code Ann. ch. 229A (West 2006 & Supp. 2009).  The above-quoted purpose of petitioner in its articles of incorporation would, as those articles acknowledge, require activities by petitioner to effect changes in existing Federal and State laws.  On the record before us, we find that petitioner does not satisfy the organizational test of section 501(c)(3) and the regulations thereunder.[8]

Petitioner's proposed activities include activities to (1) legalize sex between adults and children, (2) change child pornography laws, (3) observe sexual behavior between adults and "underagers", and (4) promote the artistic use of human nudity "YOUNG AND OLD".  On the record before us, we find that petitioner proposes to operate in a manner that promotes activities which are prohibited by Federal and State laws, violate public

---

[8]On the record before us, we also find that petitioner has failed to carry its burden of establishing that it is not an action organization as defined in sec. 1.501(c)(3)-1(c)(3)(ii) or (iv), Income Tax Regs.

policy as reflected in those laws, and tend to promote illegal activities. On that record, we find that petitioner does not satisfy the operational test of section 501(c)(3) and the regulations thereunder.[9]

The activities in which petitioner proposes to engage seek to decriminalize the type of behavior (1) for which Mr. Risdal, petitioner's founder, sole director, sole officer, and executive director, was convicted and incarcerated and (2) which formed the basis for his having been adjudicated a sexually violent predator subject to civil commitment under Iowa Code Ann. ch. 229A (West 2006).[10] On the record before us, we find that petitioner has failed to show that those activities will not provide Mr. Risdal with a platform from which he will seek to legitimize the illegal behaviors in which he has engaged, for which he was convicted, and which formed the basis on which he is civilly committed under the laws of the State of Iowa. On that record, we find that petitioner has failed to carry its burden of establishing that its proposed activities will not further the private interests of

---

[9]See supra note 8.

[10]Petitioner described its activities in Form 1023 to include "scientific" studies and research into the pros and cons of decriminalizing natural consensual sex between adults and "underagers" and decriminalizing what is defined as "child pornography". On the record before us, we find that petitioner has failed to carry its burden of showing that the "scientific" studies and research in which petitioner proposes to engage are purposes specified in sec. 501(c)(3) and the regulations thereunder.

Mr. Risdal in violation of section 501(c)(3) and the regulations thereunder.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry its burden of establishing that it was organized, and will be operated, exclusively for one or more purposes specified in section 501(c)(3).  On that record, we further find that petitioner has failed to carry its burden of establishing that respondent erred in determining that petitioner is not exempt from tax under section 501(a) because it is not an organization described in section 501(c)(3).

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.